UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KATHRYN D.,[1]

                              Plaintiff,              **DECISION AND ORDER**

v.                                                            1:22-cv-31-JJM

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

Plaintiff brings this action pursuant to 42 U.S.C. §405(g) to review the final determination of the Commissioner of Social Security that she was not disabled. Before the court are the parties' cross-motions for judgment on the pleadings [6, 7].[2] The parties have consented to my jurisdiction [11]. Having reviewed their submissions [6, 7, 8], the Commissioner's motion is granted, and plaintiff's motion is denied.

## BACKGROUND

The parties' familiarity with the 1,571-page administrative record [4] is presumed. On April 4, 2016, plaintiff filed an application for disability insurance benefits, alleging an onset date of March 1, 2015. Administrative Record [4] at 16. Plaintiff complained of neck and back injuries arising from a March 2015 car accident. Id. at 225, 731. Plaintiff's claim was initially denied. Id. at 16.

---

[1]     In accordance with the guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Western District of New York on November 18, 2020 in order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff by first name and last initial.

[2]     Bracketed references are to the CM/ECF docket entries. Page references to the administrative record are to the Bates numbering.  All other page references are to the CM/ECF pagination.

After an administrative hearing on October 9, 2018, Administrative Law Judge ("ALJ") Mary Mattimore denied plaintiff's claim. Id. at 16-28. After denial by the Appeals Council (id. at 1), plaintiff appealed to this Court. Kathryn D. v. Commissioner of Social Security, 2021 WL 195342, *1 (W.D.N.Y. 2021). District Judge Vilardo remanded the matter for proper consideration of the treating source opinions and to ensure that any specific residual functional capacity ("RFC") limitations were based on medical evidence in the record. Id. at 7.

A.   **The Hearing on Remand**

On August 23, 2021, ALJ Mattimore conducted a new hearing. [4] at 764-809. Plaintiff was represented by an attorney. Id. At the hearing, plaintiff testified about her daily activities, which included modest homemaking and self-care with frequent breaks. Id. at 796-97. On "bad pain days", which occurred "a couple time a week", she would stay on the couch all day. Id. at 798. Plaintiff's injuries to her neck, back, and shoulder were the result of car accident in March 2015. Id. at 744.

Allan Levine, M.D., a board-certified orthopedic surgeon, was called to testify as an impartial medical expert. Id. at 771-72. Dr. Levine interviewed plaintiff on the record. Id. at 773-79. He reviewed plaintiff's medical records regarding her conditions of chronic neck pain, chronic thoracolumbar back pain, left shoulder injury, and obesity, which he considered to be her medically determinable impairments. Id. at 780-83.

Dr. Levine opined that these impairments were "mild", and that plaintiff retained the ability to: occasionally lift, push, or pull 20 pounds, and frequently lift/push/pull 10 pounds, with both extremities; occasionally lift/push/pull 10 pounds with the left arm alone not above shoulder level; occasionally carry 10 pounds; sit for six of eight hours a day but not longer than 45 minutes at a time; stand for two of eight hours a day but not longer than 30 minutes at a time;

and walk for two of eight hours a day but not longer than 20 minutes at a time. Id. at 785-87. Plaintiff could occasionally navigate stairs or ramps, kneel, crouch or stoop. Id. at 787. Plaintiff should avoid ladders, scaffolds, crawling, heavy equipment, unprotected heights, and extreme cold. Id. at 787-88. She could occasionally twist her cervical or lumbar spine. Id. at 788. She could not reach with her left arm above shoulder level. Id.

A vocational expert testified that a person of plaintiff's age, education, and experience and with her various limitations would be able to perform jobs that exist in sufficient numbers in the national economy. Id. at 801-07. The vocational expert testified that plaintiff's limitations with respect to overhead reaching would not preclude that work based on her training, experience, and "how I would understand those jobs to be performed". Id. at 807.

B.     The ALJ's Decision

On September 14, 2021, ALJ Mattimore issued a Notice of Decision denying plaintiff's claim. Id. at 664-75. She found that plaintiff had the following severe impairments: degenerative disc disease of the lumbar and cervical spine with status-post implantation of permanent spinal cord stimulator, left shoulder arthritis status-post impingement syndrome and joint sprain, obesity, and myofascial pain syndrome. Id. at 740.

ALJ Mattimore determined that plaintiff retained the RFC to perform light work, except that she can occasionally lift 20 pounds; frequently lift up to 10 pounds with both extremities or the right (nondominant) extremity only; lift up to 10 pounds with the left (dominant) extremity to shoulder level; carry 10 pounds occasionally; sit for six hours in an eight-hour workday for 45 minutes at a time; stand for two hours in an eight-hour workday for 30 minutes at a time; walk for two hours in an eight-hour workday for 20 minutes at a time; never reach overhead with left extremity; occasionally climb ramps or stairs, but never climb

ladders, ropes or scaffolds; occasionally kneel, crouch, or stoop; never crawl; never have exposure to heavy vibration, dangerous equipment, unprotected heights, or extreme cold; cannot repetitively rotate the cervical or lumbar spine; and can perform simple work and make routine decisions. Id. at 743-44.

ALJ Mattimore found that plaintiff was unable to perform past relevant work, but that she could perform various jobs that exist in significant numbers in the national economy. Id. at 754-55. Accordingly, she found that plaintiff was not disabled. Id. at 755-56.

C.     **Record Evidence Discussed by ALJ**

In reaching her determination, ALJ Mattimore reviewed plaintiff's testimony at both hearings and her self-reported limitations. Id. at 744-45. She reviewed the testimony of Dr. Levine, to which she afforded "great weight", and adopted his opinions as to functional limitations in full. Id. at 745. She found that plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with her activities of daily living, such as her ability to independently engage in self-care, basic housework, pet care, operation of a motor vehicle, as well as her vacations to Amsterdam, London, and Mexico. Id. at 746.

ALJ Mattimore also reviewed and discussed the medical opinions of consultative examiner David Brauer, M.D., and treating professionals Su Zhan, M.D., Romanth Waghmarae, M.D., Cameron Huckell, M.D., Marc Tetro, M.D., Neal Siejca, PA-C, Gregory Chiaramonte, M.D., and James Jones, D.C., but declined to give them controlling weight. Id. at 750-53

## ANALYSIS

Plaintiff argues that ALJ Mattimore's decision was deficient because: (1) she failed to identify and resolve the conflict between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT"); and (2) she failed to apply the treating physician rule or give good reasons for rejecting the opinion of plaintiff's pain management physician. Plaintiff's Memorandum of Law [6-1] at 1, 18-30.

### A.   Standard of Review

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York, Inc. v. NLRB, 305 U.S. 197, 229 (1938); *see also* Biestek v. Berryhill, 587 U.S. 97, 103 (2019); Colgan v. Kijakazi, 22 F.4th 353, 359 (2d Cir. 2022) ("[a]lthough . . . the evidentiary threshold for the substantial evidence standard 'is not high,' . . . the substantial evidence standard is also not merely hortatory: It requires relevant evidence which would lead a 'reasonable mind' to concur in the ALJ's factual determinations").

An adjudicator determining a claim for Social Security benefits employs a five-step sequential process. *See* Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920. The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five. Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

B.      The DOT and the Vocational Expert's Testimony

Plaintiff argues that there was a material conflict between the vocational expert's hearing testimony and the DOT, and that ALJ Mattimore failed to address the conflict, leaving her decision unsupported by substantial evidence. [6-1] at 18-22. At the hearing, ALJ Mattimore posed a hypothetical to the vocational examiner, which ultimately became her RFC determination, that included a limitation to no overhead reaching with the left extremity. [4] at 743-44, 801-02. The vocational expert testified that such a person could perform certain jobs in the national economy, including photocopying machine operator (DOT 207.685-014), office helper (DOT 239.567-010), and marker (DOT 209.587-034). Id. at 804. Plaintiff argues that each of these jobs requires "frequent" reaching under the DOT, and that the vocational expert's testimony insufficiently explains her departure from that requirement. [6-1] at 19-20.

Social Security Ruling ("SSR") 00-4P states that "[i]n making disability determinations, we rely primarily on the DOT . . . for information about the requirements of work in the national economy". 2000 WL 1898704, *2 (2000). "Occupational evidence provided by a [vocational expert] generally should be consistent with the occupational information supplied by the DOT." Id. "When there is an apparent unresolved conflict between [vocational expert] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict." Id.; see Lockwood v. Commissioner of Social Security, 914 F.3d 87, 92 (2d Cir. 2019) ("the Ruling required the Commissioner to probe this apparent conflict before relying on [the vocational expert's] testimony"). The Ruling goes on to say that "[n]either the DOT nor the [expert] evidence automatically 'trumps' when there is a conflict". SSR 00-4P, 2000 WL 1898704 at *2. "The adjudicator must resolve the conflict by determining if the explanation

given by the [expert] is reasonable and provides a basis for relying on the [expert] testimony rather than on the DOT information." Id.

Here, the three representative jobs identified by the vocational expert are defined by the DOT to include "frequent[]" reaching, which is further described to mean one-third to two-thirds of the time. DOT 209.587-034, 1991 WL 671802 (Marker); DOT 239.567-010, 1991 WL 672232 (Office Helper); DOT 207.685-014, 1991 WL 671745 (Photocopying-Machine Operator). In Lockwood, the Second Circuit observed that reaching is generally defined as "'extending the hands and arms in any direction'". 914 F.3d 87 at 92 (*quoting* SSR 85-15, 1985 WL 56857, *7 (1985)). Thus, it held that a limitation to no overhead reaching and a representative job requiring occasional or frequent reaching presents an "apparent conflict that triggers the Commissioner's duty to elicit an explanation that would justify crediting the testimony". Id. In such a case, "it [is] the Commissioner's duty to elicit an explanation from [the vocational expert] as to whether those occupations actually require overhead reaching". Id. (cleaned up).

Therefore, the vocational expert was required to provide some "explanation . . . as to whether those occupations actually require overhead reaching" (id.) and to "provide[] a basis for relying on [her] testimony rather than on the DOT information". SSR 00-4P, 2000 WL 1898704 at *2. In Lockwood, the Second Circuit held that the ALJ's mere inquiry as to whether the vocational expert's opinion "was consistent with [the DOT]", and her response that "[i]t is", were not sufficient. Id. at 93. But "[t]hat is far different from what happened here, where the conflict was acknowledged and the expert provided testimony about why he believed that the jobs in question did not require overhead reaching". Barbara W. v. Commissioner of Social Security, 2025 WL 276668, *6 (W.D.N.Y. 2025).

Here, the ALJ asked the vocational expert if her testimony was "consistent with the DOT", and specifically noted the topic of overhead reaching. [4] at 807. The vocational expert responded that:

> "[I]t's not inconsistent with the DOT. The DOT, as you said, does not break reaching out in terms of dominant versus non-dominant or overhead. The DOT does address reaching. But my responses are based upon -- in part, on my interpretation of the DOT and my training and education and work experience as a vocational rehab counselor and how I would understand those jobs to be performed."

Id. In her Decision, ALJ Mattimore found this to be a "reasonable explanation", citing the expert's "appropriate experience to make such vocational determinations". Id. at 755.

In Alisa O. v. Commissioner of Social Security, in a very similar scenario, the court held that a conflict between the claimant's RFC limitation to no overhead reaching and the requirements of the representative jobs was adequately addressed by the vocational expert's testimony. 2021 WL 3861425, *5 (W.D.N.Y. 2021). There, "the vocational expert specifically noted that she did take into consideration Plaintiff's overhead reach limitation and indicated that the DOT does not distinguish between reaching overhead, in front, to the sides, and in all other directions . . . and further[] indicated that her opinion that Plaintiff could perform occupations requiring such reaching abilities was based on her knowledge of how those specific jobs were performed." Id. The court found that "[t]his is precisely the type of analysis that the Second Circuit in Lockwood indicated should have been done by the vocational expert". Id.

Similar colloquys have been approved by courts in this district. See Thomas K. v. Commissioner of Social Security, 2025 WL 484178, *5 (W.D.N.Y. 2025); Aracelis N.-B. v. Commissioner of Social Security, 2024 WL 4647610, *5 (W.D.N.Y. 2024); Barbara W., 2025 WL 276668 at *6. For her part, plaintiff points to cases in the district that seem to impose a greater burden of inquiry and explanation. [6-1] at 20-21; Reply Brief [8] at 3-4; see, e.g.,

Roderick R. v. Commissioner of Social Security, 2023 WL 3642035, *7 (W.D.N.Y. 2023) (holding the vocational expert must also explain "how the job can be done by someone with the claimant's limitations"); Matthew M. v. Commissioner of Social Security, 2022 WL 3346949, *4 (W.D.N.Y. 2022) (suggesting that the vocational expert should have offered some "observation, research, or specific knowledge of the job" to support his conclusion"). I acknowledge this divergence of opinion, but ultimately agree with the cases cited above that a colloquy of this nature satisfies the requirements of Lockwood and the SSRs.

Thus, "[b]ecause the ALJ meaningfully questioned the VE to resolve the apparent conflict between the RFC and the DOT job descriptions, the ALJ's step-five determination was supported by substantial evidence. Accordingly, remand is not required on this basis." Aracelis N.-B., 2024 WL 4647610 at *6. To the extent plaintiff had further questions or concerns about the basis of the vocational expert's testimony on this point, plaintiff's counsel could have explored the issue on cross-examination, as he did for other topics. See [4] at 805-06.

**C.    Treating Physician Rule**

Plaintiff argues that ALJ Mattimore again failed to properly apply the treating physician rule, specifically with respect to plaintiff's pain management physician, Su Zhan, M.D. [6-1] at 22-30. Dr. Zhan completed a "Physical Residual Functional Capacity Questionnaire" dated January 10, 2019, in which she assessed plaintiff with substantial limitations and opined that "based on the patient's pain and decreased function we do not see her having gainful employment now or in the future". [4] at 1070-74. Dr. Zhan first started treating plaintiff in August 2015. Id. at 731.

As the court explained in the first Kathryn D. decision, under the rules applicable to plaintiff's claim,[3] "a treating physician's medical opinion is entitled to controlling weight so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record'." 2021 WL 195342 at *2 (*quoting* 20 C.F.R. §404.1527(c)(2)). If an ALJ decides to give less than controlling weight to a treating source's opinion, she must "explicitly consider, inter alia: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and[ ] (4) whether the physician is a specialist." Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015) (quotations omitted). These are the so-called "Burgess factors". *See* Estrella v. Berryhill, 925 F.3d 90, 95 (2d Cir. 2019) (*citing* Burgess v. Astrue, 537 F.3d 117 (2d Cir. 2008)). "At both steps, the regulations require the ALJ to give 'good reasons' - i.e., reasons supported by substantial evidence in the record - for the weight she affords the treating source's medical opinion." Schillo, 31 F.4th at 75.

"An ALJ's failure to 'explicitly' apply the Burgess factors when assigning weight" to a treating source opinion "is a procedural error". Estrella, 925 F.3d 90 at 96 (*quoting* Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam)). As such, "[a] court can conclude that such an error is harmless if the ALJ has otherwise provided "good reasons" for its weight assignment." Schillo, 31 F.4th at 75. More generally, "[i]f . . . 'a searching review of the record' assures us 'that the substance of the treating physician rule was not traversed,' we will

---

[3] "For claims filed before March 27, 2017 (as is the case here), the agency must apply 20 C.F.R. §404.1527." Schillo v. Kijakazi, 31 F.4th 64, 70 (2d Cir. 2022).

affirm." Estrella, 925 F.3d at 96 (*quoting* Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam)).

    Here, ALJ Mattimore identified Dr. Zhan as a treating source and a pain specialist, and noted her "long treating relationship" with plaintiff. [4] at 750. She nonetheless found that the "overall objective evidence" as reviewed and summarized by the hearing expert, Dr. Levine, did not support the limitations opined by Dr. Zhan. Id. In support of this conclusion, ALJ Mattimore cited Dr. Zhan's own treatment notes, which she interpreted to generally demonstrate "stable pain, intact sensation and not more than a 'mild, stiff gait'". Id.; *see* id. at 661, 668, 684, 687, 704, 712, 1427. Dr. Zhan also cited treatment records from other providers indicating that plaintiff had "normal gait, normal strength and normal sensation", and noting significant improvements of her pain except for periods of increased pain associated with increased activity such as lifting or helping her mother move. Id. She concluded that the RFC limitations with respect to sitting, standing, lifting, and carrying, as well as the nonexertional limitations would adequately account for any potential exacerbation of pain. Id. Ultimately, ALJ Mattimore gave Dr. Zhan's opinion "some weight", but gave "greater weight" to Dr. Levine's opinion. Id.

    Accordingly, I find that ALJ Mattimore did apply the Burgess factors in deciding to give Dr. Zhan's treating opinion less-than-controlling weight. ALJ Mattimore's reasons for assigning such weight are grounded in substantial evidence in the record, and are thus "good reasons". *See*, *e.g.*, Schillo, 31 F.4th at 77; Meyer v. Commissioner of Social Security, 794 F. App'x 23, 26 (2d Cir. 2019). Therefore, the treating physician rule was not violated, and remand is not required on this ground.

Plaintiff's argument to the contrary is essentially that the evidence of record supports a different conclusion than the one reached by ALJ Mattimore. *See* [6-1] at 23-27 ("[o]verall, the ALJ did not properly consider the factors, and had she explicitly considered each factor, greater weight would have been given to Dr. Zhan's opinion"). Having found that ALJ Mattimore's conclusion was supported by substantial evidence, plaintiff's argument that a contrary conclusion could have been reached is of no consequence. *See* Brault v. Social Security Administration Commissioner, 683 F.3d 443, 448 (2d Cir. 2012) ("[t]he substantial evidence standard means once an ALJ finds facts, we can reject those facts 'only if a reasonable factfinder would *have to conclude otherwise*'"); Dailey v. Commissioner of Social Security, 2016 WL 922261, *6 (N.D.N.Y. 2016) ("it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support [her] position. Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record").

## CONCLUSION

For these reasons, the Commissioner's motion for judgment on the pleadings [7] is granted, and plaintiff's motion [6] is denied.

**SO ORDERED**.

Dated: July 29, 2025

/s/ Jeremiah J. McCarthy
JEREMIAH J. McCARTHY
United States Magistrate Judge
